1-14889, Angela Del Valle versus the Secretary of State. Mr. Stoler. Yes, okay. May it please the court. My name is David Stoler. I am a private attorney in Orlando, Florida, and I represent Angela Del Valle in this case. This case brings up a longstanding principle called the Doctrine of Consular Non-Reviewability in regards to whether or not there's any type of judicial review available when someone applies for a visa at a consular office abroad. The district court below denied the request on a motion to dismiss, saying that there was no subject matter jurisdiction. The government also put forth a failure to state a claim reason, reason under its motion to argument for dismissal as well. I think the government in its brief would agree that subject matter jurisdiction exists. And so I guess the question of it is whether or not the first, whether the case needs to be remanded to the court simply for the court to reassess it in light of that, or if judicial review is available or there is subject matter jurisdiction, what constraints the court has with regards to how far it can go. I'm sympathetic to what your client is trying to do through you and the fog that lies behind immigration decisions sometimes, but your request was essentially for the district court to figure out whether or not the agency, the consular official, had a basis for one of its reasons of denial, right? Doesn't that go to the merits? I don't believe it goes to the merits. The thing is- You wanted the district court to order the agency, the consular official, to turn over in camera the documents or evidence that had been reviewed to make the determination about your client's husband. Indeed. And what's the court going to do? It's going to look at that and say, oh, I looked at the evidence and the answer is either the evidence that I have before me supports the decision of the consular official or it does not support the decision of the consular official. Either way, it seems to me, and I speak only for myself, that's a decision on the merits of the visa decision, is it not? Your Honor, we have no disagreement that somebody who makes a false claim to U.S. citizenship, somebody who attempts to get a visa by fraud, or somebody who's been in the United States subject for more than a year and is subject to the unlawful presence provisions is inadmissible to the United States. The problem with this is that under Mandel, you have to have something that's facially legitimate and bona fide. Facially legitimate are the provisions of Mandel. We denied your case based on these three reasons. The bona fide has to do with the factual predicate underpinning whether or not there's actually a factual predicate. Because if the only requirement under law is for the consular officer to give a refusal sheet, then the consular officer is free basically to say, okay, we made a decision. Whether or not it's supported, it doesn't matter. There's no judicial review available. In a situation between what it is that the visa applicant knows and the provision of law that the consular office provided as a means to render the person inadmissible. So you get review every single time? The thing is- Because a person in your client's situation, in order to try to get judicial review, and the consular official's decision has a facially valid connection to immigration law, there's nothing behind that decision because there's no evidence to support it. And you're going to get a substantive review basically under the APA of the consular decision's official. Disagreed. What's the district court going ... What do you want the district court in this case to do? What I want the district court to do is I want the district court to see that there is a factual predicate. That's all. And so it will assess the reasonableness of the decision. Under what standard, by the way, do you want the district court to do this? Under what standard? There are a lot of different standards of proof. There's preponderance, there's substantial evidence, there's clear and convincing evidence, there's evidence beyond a reasonable doubt. So what standard do you want the district court to apply in figuring out whether there was a reasonable factual basis for the consular official's decision? Well, and that brings up another problem in this case, which is that the alien actually has the burden of establishing clearly and beyond a doubt that they are not inadmissible to the United States as charged. Well, how does an alien do that if the alien has no idea what the factual predicate is? I'm giving you that point. So I'm giving you that and you've gotten to the district court and now the district court's got the materials in front of her. The district judge has the materials. What do you want the district court to do? In this case, I think it's a really easy decision to make because at least from what I can tell, there are fingerprints, there are immigration documents, and I'm going to guess there is a photo available somewhere of whoever it was that committed the fraud, whoever it was that made the false representation to being a United States citizen. And with the evidence, that evidence doesn't meet, it's not the same as my client, his fingerprints, his photo documents relating to him. Well, then it's obvious that that's not him. I mean, what I'm asking here- But that sort of a claim swallows the whole principle of consular unreviewability because any person who is denied a visa overseas is going to argue that the immigration decision was wrong on its facts. Sure. And is going to ask a district court to review the facts to see whether or not there was a reason basis for it. And the Supreme Court says that you can't do that. Correct. That's what Kerry v. Din is all about. Kerry v. Din says, look, you worked for the Taliban. There's a terrorist security related ground that would find you to be an admissible on. We don't need to put the pieces together. We don't need to connect the dots for you. We've given you enough. That provision telling you what the statutory provision is, is sufficient for you to apprise yourself of what the factual predicate is. I know the problem, the problem is that Kerry v. Din was a plurality decision that doesn't affect the precedent setting nature of Mandel. And Mandel, this is the language from Mandel. When the executive exercises this power of exclusions of aliens for the denial of a visa negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of discretion nor test it by balancing its justification against First Amendment interests. And in Mandel, what was the issue? The issue was you had a I think it was a supporter of communism trying to come to the United States. And again, on some security related grounds, I apologize because the provisions of law back then were different than they are similar in language, but different in numbers. So I can't remember the exact numbers. But we knew what the guy had done. We knew what the ground was. And there was a connection between the two. Enough said. That's what, in my opinion, that's what Mandel says. And Kerry v. Din says exactly the same thing. We know what the ground is. We know what the factual basis is. Enough said. You don't need to connect the dots for us. But if an individual like Ms. Del Valle's husband applies for this provisional waiver here in the United States where he submits his fingerprints and the government says, hey, you're OK, go down to the consulate, you should be all right. And if what the consulate denied upon were reasons that existed, USCIS would have never approved the provisional waiver because the provisional waiver can't waive those other grounds. So the alien leaves the United States thinking he's OK, goes down there, gets surprised. I don't know what this is all about. And what we're asking for is, in some sense, to have the district court connect those dots, because otherwise the consular officers are left to give legitimate reasons, right? It's legitimate plus a bona fide factual basis. And sometimes those are kind of subsumed within the ground itself. I certainly know that somebody that's denied a visa for committing fraud, they committed fraud. I don't know what the fraud is, but they committed fraud. I know that somebody who's denied a visa. But how do you know that? For making a false claim to citizenship. No, no. Making a false claim to citizenship. There were two other grounds here. There are three. Two other grounds, in addition to the ground that you're contesting. I'm contesting the fraud, 1182A6CI, and the false claim to citizenship, 1182A6CII. The other one, I agree with. We applied for a waiver. So if you agree with that one, what does that do to your overall claim? The problem is we got a waiver to get around the 212A9B problem. I know, but the decision revoked that provisional waiver. Exactly. So we go into this saying, look, you're inadmissible under this one ground. The person then gets the provisional waiver, goes down to the consulate, and the consulate says, oh no, you made a false claim to citizenship. You also made a false claim to get an immigration benefit. No go. We revoke that provisional waiver and have a nice day. The process is not supposed to happen that way. Because those same reasons that the refusal sheets say, make it such that the provisional waiver was revoked, should have led to the individual being denied the provisional waiver. But that didn't happen. And the reason it didn't happen is because the factual predicate didn't exist. So you have a legitimate reason here. There are grounds under the Immigration Act that I would agree or render somebody inadmissible, but you have no bona fide reason. There is no factual predicate in the record. So the principle, I don't want to put words in your mouth, but this is where I think you're headed. The principle of consular unreviewability. All that means is that in some cases, the government is going to get to win at the end of the day. But in every case where you challenge a consular decision on denial of a visa, you either get, you certainly get past the 12B6 motion if you agree that there were no facts to support the agency decision. You get past the 12B6 motion, which means you're going to get discovery, and you're going to get litigation, and you may even get to a trial. So only at the end of the case, whether it's a summary judgment scenario or a trial scenario, will the principle of consular unreviewability kick in. Right? That's your position, I think. But I think the problem is- In every case in which an alien or someone who is a relative of an alien is claiming that a consular denial of a visa overseas had no factual basis, you will get discovery. No. I disagree. I disagree. Because Kerry versus Dean- A ground is that you engaged in a sort of activity which renders you inadmissible. I don't know the immigration code as well as you do, so you can come up with any statute you want or any provision you want. So it's a ground of inadmissibility. And the consular official says, I'm denying the visa based on this ground. The alien's claim is, factually, there's no basis for that ground. I know the ground is a legal claim of inadmissibility, but what I'm accused of having done, I never did. And I want to see the proof. I want you to show me how in the world you came to that decision. In your words, I want you to connect the dots. So in every case where there is a challenge, a factual challenge, you are going to get discovery and you may even get to go to trial. My time is up. Can I respond to the question? Yes. I disagree. And here's why I would say that I disagree. This case presents a certain procedural history that makes it such that what happened at the consulate should have never happened, such that the court can infer that the factual predicate doesn't exist. So it's not merely a situation where the alien goes, you know something? I have no idea. They deny me on this ground, I don't know where they're coming up with this stuff. So I'm going to go in court, and as you said, get discovery, figure all this out, and we have to go through all the procedures in a civil case. In this situation, in this particular situation, you have a scenario where what happened at the consulate should have never happened. And if it should have never happened, then it provides a basis upon which to get over at least the motion to dismiss, because we have provided enough, taken in the light most favorable to the plaintiff, to substantiate the claim that although facially legitimate reasons were given, they're not bona fide because the factual predicate doesn't exist. You don't need to necessarily connect the dots to me, right, in this case, but give me something, because otherwise, why am I sitting at the consulate in Ciudad Juarez being denied if I was never to go there had these things been known to me prior in the United States that I may have had an ability to challenge? But that didn't happen. So in this situation, under the procedure that was in place in this case, the factual predicate simply doesn't exist, and we're asking for the court, this court at least, to vacate the decision on the motion to dismiss and at least order the government to come forward in the way that we've proposed in our complaint and let the judge take a look at what's there. Okay. I see my time is up. Thank you very much, Mr. Stoller. You've saved your time for rebuttal. You want to help me with your name as well and pronunciation? Thank you for asking, Your Honor. It's Sean Siakinen for the defendants in this case. I would have never gotten that, so. Well, thank you for asking. I appreciate it. May it please the court. As I understand my opponent's argument, it boils down to the suggestion that the facially legitimate bona fide reason test essentially has two prongs and that by his view, the facially legitimate part is satisfied with the statutory citation and that then the bona fide part requires a factual predicate. And there are two problems with that. The first problem is that, Judge Jordan, you're absolutely correct, it would prove too much. The second problem is that the Supreme Court itself has already rejected that argument. The majority opinion in Trump versus Hawaii had already looked at the controlling opinion in Dinn. And that binding controlling precedent holds that in Dinn, Justice Kennedy reiterated that the political branch's broad power over the creation and administration of the immigration system meant that the government need provide only a statutory citation to explain a visa denial. And here, the political branch. I thought Trump versus Hawaii sort of brushed away the consular unreviewability stuff pretty quickly and got to the merits. That's true. It did. Which illustrates why it's not jurisdictional, for one. But in doing so, it holds that in Dinn, Justice Kennedy reiterated that the government need only provide a statutory citation to explain a visa denial. So that's a recent majority opinion of the Supreme Court reading and interpreting not the plurality opinion in Dinn, but the controlling concurring opinion that is binding. And I would further like to point out that the court there referenced Congress' creation and administration of the immigration system. And here, the political branches have determined in subsection B of 8 U.S.C. 1182 what notice is required. And 1182B says that the notice of decision itself and the relevant statutory provision are all that's required. So the Supreme Court has addressed this and Congress has addressed this. And there's no case that I'm aware of from the Supreme Court to suggest anything to the contrary. So let me ask you again because we have to write an opinion and I don't think we have touched on the principle of consular unreviewability in a published opinion ever. That's right. So let me ask you this question. Let's say that you have a consular official who gives a valid statutory ground of inadmissibility for denying a visa, but then explains in the same sentence the factual predicate and the factual predicate has nothing to do with the statutory ground. And I know I'm giving you a wild hypothetical, but the consular official says you're inadmissible because you falsely claim to be an American citizen. What happened here? And our proof of that is that the sky outside today is gray. What do we do with that sort of a claim? Well under Dinn and Mandel, I think that that sort of problem would best fit under the bad faith exception that those courts acknowledge. And so in that extreme hypothetical, then I think it would be up to the petitioner, the visa applicant, to plausibly allege that there was some bad faith reason for the denial and perhaps then that is how they could go about attempting to seek judicial review and the question would then be under 12b-6 whether the documents attached to the complaint and there was some element of bad faith in the decision. But according to Dinn and Mandel, once the consular officer cites to a relevant statutory provision, then courts will not look behind that decision absent a plausible allegation of bad faith. And how would they make an allegation of bad faith and where would that be tried? Because if the consular is in a foreign country and of course the alien can't get here, do we create a separate court and pick it up and move it to Germany or wherever it is and bring all the apparatus with it so that we can litigate the bad faith issue? No, I think that Mandel and Dinn, in a concurring opinion... No, no, let's talk about the practical problem. Yes. How do we litigate and where, under what rules do we litigate the bad faith? In the district court as Mandel and Dinn... In the district court, but the person who is applying can't get there. The district court is going to try a case without the person. I have not thought about that practical consideration. We agree that that's the hardest test. I'm sorry? It's the hardest test. That's just ridiculous. If the government is not going to... I'm not saying this is appropriate or not, but practically, you'd have to ask the government whether it's willing to parole the alien into the United States. Under some statutory authority. Under some statutory authority, and if not, the district court being put in a hopeless position would authorize depositions overseas. That certainly would be another way, yes. You could take an electronic deposition with video and audio and then introduce it at trial. I don't see any obstacle or impediment to that, but I must confess... Except the person is not there for the trial. Correct, yes. The person is there for the deposition, but not the trial. I'm sorry, Your Honor? I don't know of any precedent ever where you try a case in absentia, except a fugitive. I don't either, and this goes beyond sort of the allegations and the complaint and the arguments in the brief. I would be happy to submit a 28-J letter addressing this, but I apologize. This is just something that I have not considered this practicality. And meanwhile, suppose that the plaintiff doesn't have any constitutional right in the first place, and there's no standing. Well, yeah, that much is agreed to, yeah. Everyone agrees. The Supreme Court hasn't answered those questions with a majority. The Supreme Court has repeatedly held that the alien seeking admission to the country himself does not have a constitutional right to enter into the United States. No, the Supreme Court hasn't said a word about the plaintiff in the case. In this case. Right, right. They've had cases where the alien brings a lawsuit. I'm not talking about that. I'm talking about whether in a case like this one, there's a question about whether there's a constitutional right in the first place. That is the question in the plaintiff's case. There's another question of whether or not this person has standing to litigate the absent person's rights. Dinh and Mandel set a certain status of comfort for that. Oh, but Mandel wasn't involved in, it was not a case like this. Mandel was where the alien himself was seeking relief. No, that's not correct, Your Honor. The plaintiffs in Mandel were academics and other U.S. citizens who were alleging that their First Amendment rights were violated. I know that. I understand that. But they didn't have, they had no, they're traveling on supposedly on their First Amendment right. Yes. Yeah. So if they didn't have any, they've got nothing. Correct. Okay. Yes. All I'm saying is the procedural morass to me of trying the bad faith issue simply to avoid the constitutional question, whether this plaintiff has anything at all, can A, claim standing, and B, has a constitutional right to have the husband present. Well, I don't think that Dinh or Mandel hold that the bad faith exception, short circuits are circumvents the constitutional. Yeah. To avoid the constitutional question. Well, that's not at all how I read Dinh and Mandel. I read Dinh and Mandel to establish that. I know. Put Mandel, to me, factually, Mandel is not this kind of case. There's no First Amendment right involved here. Well, that's true. There are different alleged constitutional rights. The Amendment right here is part of the penumbra, having to do with family and things of that sort. Yes. And all I'm saying is we're going to dream up some kind of mechanism for trying bad faith in order to avoid the constitutional question, which might avoid all the rest of it. Again, if we held that there was no constitutional right, the case is over, isn't it? Well, if this court were to go that far, that would be to address, if this court were to adopt the- I'm not suggesting we should go that far. What I'm saying, though, is if she doesn't have a right, the case is over, isn't it? Absolutely. And that was the plurality opinion's view in Dinh. But again, that's not the controlling opinion. And so the framework that I'm arguing under is the concurring opinion in Dinh. But that opinion didn't answer the question. It does not answer the question as to procedurally how a trial could theoretically- Well, it didn't answer the question about the constitutional right either. That's true. Yes, that's correct. Okay. But if I can make one more point in response to your concern, Your Honor, it occurred to me that in this case, if there were to be a trial, the plaintiff in this case is the wife, the U.S. citizen. I understand. She would be able to attend trial. There wouldn't be any- But she's got to have a right, and she's exercising. Yes. And if she doesn't have one, it doesn't matter. I absolutely agree with that. I was just responding to your specific concern about how the trial would work. And the point being that in this case, Mr. DelVal, the alien, is not the plaintiff in this case. That's the only point I was attempting to make there. So for the reasons stated in our brief and in the Trump v. Hawaii opinion, the Dinh concurring the sort of inquiry into factual predicates that Mrs. DelVal seeks to leverage here. But there's one other point that I'd like to make. Even under Mrs. DelVal's expansive reading of Dinh, her complaint still fails to state a plausible claim for legal relief under 12b-6 for a very specific reason, and that is the there were two specific bases for the consular officer's denial. And she alleges that her husband's application was denied based on two false claims of citizenship at ports of entry along the southwest border on separate occasions in 1995 and 2002. These allegations are the linchpin of her complaint because she seeks a writ of mandamus to compel the production of biometric data from these particular alleged encounters, which she contends might establish that this was a case of mistaken identity. And this is the only error that she alleges in the consular officer's decision, and it's the only relief that she seeks. But to survive the dismissal under 12b-6, her allegations must plausibly support beyond conjecture or speculation the reasonable inference that she's in. But how could she possibly know when she wasn't there?  The law would create a presumption. Since the government has all of the evidence in Mexico, all of it, wherever it took place, she can't do anything but make bold allegations. Yes. And what I'm trying to explain is why those allegations are legally insufficient. So the question would then become whether we'd presume the facts adequate and make the government put up the evidence. And I'm trying to explain why this court cannot and should not do that. And there's a very specific reason for that, because those allegations support only two inferences. The first inference would be that the consular officer, in fact, told Mr. DelVal that that was why his application was being denied. But if that was the case, then consular non-revealability would plainly bar Mrs. DelVal's claims because her husband would have, in fact, received this additional factual predicate that she The only other inference that could plausibly support those allegations is that Mr. DelVal, in fact, made false claims of citizenship at those ports of entries, at the times alleged, and that the allegations are based on his personal knowledge. And if that's the case, then, getting to Your Honor's point, clearly, Mrs. DelVal would have no constitutional right to have her husband present in this country in violation of the But she's alleging that that's not true. Well, yes, but under 12b-6, the standard is plausibility. And again, Well, I'm back to my presumption. Yes. She can't possibly know, can't possibly have the evidence. Let's draw an analogy to employment discrimination cases. You're familiar with those. Yes. And we set up a presumption under McDonnell Douglas. Yes. And why do we do that? You've applied for a promotion, and you're a minority, and it goes to somebody who's not protected. Yes. And we create a presumption, don't we? Because that's what the Supreme Court said we should do. And we create the presumption because the employer has all the evidence. Yes. Okay. In this case, the government has all the evidence. All of it. Yes. She doesn't have any. Yes. Well, then it's not possible, you say she has a right to bring the lawsuit and a right to make the allegation, but she can't do anything more than make a bald allegation because she doesn't have the evidence. Yes. Okay. That's the consular non-reviewability doctrine. Under Iqbal, I suggest that's enough. Well, I would suggest that under Iqbal, if her husband, if the allegations are not based on her husband's personal knowledge, and they're not based on something the consular officer told her husband, either one of which would foreclose her claims, then they're nothing more than sheer conjecture and speculation, and that's my only point. There's no way we can figure that out at the 12B6 stage. Well, I think you can figure it out. It's one thing to argue that the principle of consular non-reviewability doesn't allow her claim to go past a 12B6 motion. It's another thing to say that her complaint fails 12B6 completely aside from that principle. You're correct, Your Honor. This is sort of the further point that I'm making, and if this court is not inclined to go that far, then clearly 12B6 was appropriate regardless of the allegations under the consular non-reviewability doctrine for the reasons that the Supreme Court held in the trial. Because then what you're going to get is going to be a short-lived victory if we go on that extreme ground, and the reason is that the next case down the pike is going to involve, what, a verified complaint, and then good luck piercing that. I hope that that is not how this court rules. I was simply pointing out that if the court had any concern about resolving the scope and contours of consular non-reviewability, that the allegations in this complaint would give the court an out. But I would prefer, I do think that the court should squarely address the question that's presented. All right. Thank you so much. Thank you. Few things. The issue regarding 1182B, the notice requirement, I think to read it as saying that all the consular officer needs to do is provide statutory provisions and that's the end of the discussion kind of draws a conflict between what Mandel says and what the statute says. In other words, I think Mandel could have, if that's what the law is, then Mandel could have stopped with facially legitimate. That's it. We're done. So you don't need to give any factual, it doesn't need to be bonafide, and it just needs to be facially legitimate. So if we give you a refusal sheet, give you ground one, give you ground two, give you ground three, that's enough. With regards to where we're at in the litigation here, I think that the complaint alleges sufficient, make sufficient allegations, sorry, such that we can get past the motion to dismiss if everything's taken in the light most favorable to the plaintiff. And with regards to Judge Tiuflat's concern, I think a lot of these issues would be resolved probably by summary judgment. I'm not sure. Oh, come on, counsel. Well, the issue is you have a record. It's a summary judgment and there's nobody there. But then you're, let's assume, let's, I think, let me speak for Judge Tiuflat, I think I know where he's headed. At summary judgment, the government produces certain of the biometric data, okay? It's limited, but there's something there. What is Mr. Del Valle going to produce at summary judgment? Fingerprint analysis showing that he's not the person. An affidavit, an affidavit saying that wasn't me, it was not me. I don't think that works. The government is confused, it made a mistake, it's not me. They're fingerprints, Your Honor. They're readily identifiable. You can have an expert take a look at two exemplars and say that this person is not that person. Simple as that. Okay. And what do you do when you have fingerprint evidence on one side and an affidavit on the other saying, listen, I know what the fingerprint evidence suggests, but that wasn't me. Fingerprint examiners have made mistakes before, the government's made mistakes before, it must be a problem in the data, it wasn't me. And here's an affidavit saying I never misrepresented myself as a U.S. citizen. What's a district court judge going to do at summary judgment? Your Honor, I don't know on that because I'm not going to make that claim. Because in my assessment- I'm not suggesting you would as an attorney, but I'm suggesting that in the normal course of cases, there's somebody who's going to do that. I think the court's going to give deference to the agency, ultimately. At summary judgment? Well, I mean, there's been a decision that's been made by the agency on the question of whether the person's inadmissible or not. There is a factual record, a predicate- So you apply, going back to the question we started with, you apply APA type review at summary judgment? Is that what you're asking for? Yes. Well, what other right do we have? I don't know. You're the master of your own complaint. Correct. And I've asked for relief under the APA. This is not a case that I would think is one where we're going to call witnesses. The guy's obviously going to say it's not me. Counsel, there's not a procedure available, in my view, under the rules that would accommodate what you're talking about. APA review, Your Honor? A federal judge would have to do a lot of inventing. He'd have to draw a whole body of rules to govern this kind of a situation. Respectfully, I disagree. Well, you're running out of your time. That's one of your problems. The agency has made a decision. We are challenging that decision. There is a record upon which that decision was made, and we're asking for that to be reviewed. Thank you. You can wrap up, Mr. Stoler. Sure. Underlying this case, I think this case is somewhat of an outlier in the sense that prior to this foreign national leaving the United States, he gave his fingerprints to the government. The government ran those, I would imagine, the government ran those fingerprints through its databases and came up with this individual being, couldn't find anything showing he was inadmissible for any reason other than unlawful presence. Afterwards, he goes to the consulate, consulate comes up with something completely different. So to the extent that he left understanding one thing and the consulate came up with another thing, we argue that there's no factual predicate there, and that under Mandel, that we get over the motion to dismiss and the government needs to produce some of that evidence to the court. Thank you. All right. Thank you both very much. Thank you.  Okay.